UNITED STATES ENVELOPE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7422, 12432. Promulgated January 21, 1928.

*Charles D. Hamel, Esq., Lee I. Park, Esq.,* and *Richard S. Doyle, Esq.,* for the petitioner.

*A. R. Marrs, Esq.,* for the respondent.

OPINION.

LITTLETON: The only issue in this case is whether at the date of organization of the petitioner the intangibles which it then acquired were paid in for stock.

The respondent contends that when we look through the form to the substance of the transaction, the petitioner acquired intangibles through the issuance of stock therefor, and, therefore, the limitations provided in section 326 (a) (4), Revenue Act of 1918, with respect to property so acquired, should be applied. On the other hand, the petitioner contends that its stock was not issued for the properties of these various companies which were acquired, but there were, in fact, two separate and distinct transactions, as follows:

(a) The issuance of 37,497 shares of preferred and 7,498 shares of common stock for cash, $4,499,500, and

(b) The purchase by the petitioner of the assets (both tangible and intangible) of the ten envelope companies for $4,250,000 cash and $2,000,000 of its bonds;

and that, therefore, its intangibles would not be subject to the limitations provided in the section of the statute referred to above. No question is raised as to the value of the intangibles when acquired, the whole question being as to their manner of acquisition.

It is, of course, true that upon the completion of the transaction in question the petitioner had issued its stock and had acquired assets, but from this can we say that therefore the assets were paid in for stock? The transaction through which the assets were transferred to the petitioner was a transaction between the petitioner and Dean & Shibley and not between the petitioner and these several companies. The record does not show, nor is any contention made, that Dean & Shibley were in any sense the agents of either the petitioner or these vendor companies. That the petitioner, a corporation, was an entity separate and distinct from its stockholders, is so well established that discussion thereof is unnecessary. *Cannon Mfg. Co.* v. *Cudahy Packing Co.*, 267 U. S. 333. The transaction in question took place in 1898, long before an excess-profits tax could have been remotely contemplated and, therefore, it can not be said that the method pursued was availed of for purposes of tax

evasion. See *Regal Shoe Co.*, 1 B. T. A. 896. We have, therefore, the situation where the petitioner, in its corporate capacity, entered into a contract for the issuance of its stock to two individuals for cash and also entered into a separate contract under which it purchased certain assets for cash and bonds. Both contracts were made pursuant to corporate resolutions, and both contracts were carried out as authorized. To say that form should be disregarded and substance only considered to the end that the two contracts and the two transactions become one contract and one transaction, would be taking a position which we regard as untenable. The Board said in *Appeal of Edward A. Langenbach*, 2 B. T. A. 777:

The argument that we must regard substance and not form is elusive, for its adoption leaves us confronted with the equally difficult task of distinguishing form from substance.

In these proceedings the parties were seeking to effect the incorporation of the petitioner in such a manner that it would conform to the laws of the State where it was being incorporated and also have the petitioner come into ownership of the assets of the several vendor companies. There was " form " involved in each transaction, but there was likewise " substance," which was equally important. Cf. *United States* v. *Phellis*, 257 U. S. 156.

At the hearing, some point was made of the circumstances surrounding the certification of the check by the Old Colony Trust Co. on behalf of Dean & Shibley and whether there was cash or collateral back of this transaction. While the record fails to show what the arrangement was between the bank and the brokers, there is positive evidence to the effect that the check was properly certified by the bank and that the bank had ample funds with which to meet the obligation which was thereupon imposed upon it. When, therefore, the corporation issued its stock for this check, it would be idle to say that such stock was not being issued for the equivalent of cash or that such stock was being issued for assets which this check was later used to acquire. Not only was each transaction complete in itself, but each transaction partook of a form and regularity which we can not ignore and say that because the money which was received upon the issuance of the stock was used to acquire assets, the two transactions were one.

The Board has had cases before it on other occasions where the taxpayers were seeking to have included in their invested capital intangibles which came to them at the date of incorporation, but which, for reasons similar to these which actuated this petitioner in adopting its particular form of organization, were shown not to have had stock issued therefor. *Nature's Rival Co.*, 6 B. T. A. 294; *Charles Rubens & Co.*, 6 B. T. A. 626; *Lafayette-South Side Bank*,

7 B. T. A. 1307. In these cases we denied the contention advanced that these taxpayers be allowed to say that something was done which was contrary to the acts and expressed intentions of the parties, stating in the *Rubens* case that:

The parties themselves deliberately and with unmistakable clearness chose to have the tangible property alone paid in for capital stock and the intangible property separately treated. This was their manifest intention and it was legally fulfilled. The fact that a subsequent revenue law makes their choice less fortunate to them than it might otherwise have been and imposes upon the corporation a greater tax than if another course had been adopted, can not serve to justify an interpretation of the transaction at variance with the clear language of the instruments by which it was performed.

In the instant case the method adopted by the petitioner was fortunate, and it would be inconsistent to deny to it the benefits which flow to it on account thereof. The rights and liabilities of the parties were fixed by the contracts and agreements which the parties entered into in order to bring about the ends sought, and we must determine the petitioner's tax liability on this basis, and not on the basis of a course of procedure not adopted, which might have accomplished the same result, and which would have resulted in a greater tax to the Government under statutes which could not have been foreseen at that time.

In view of the foregoing, the Board is of the opinion that the transactions in 1898 through which the petitioner acquired the assets of the several envelope companies in question were not transactions wherein stock was issued for these assets, and, therefore, the limitations provided in section 326 (a) (4), Revenue Act of 1918, with respect to the acquisition of intangibles for stock, are not applicable.

*Judgment will be entered on 10 days' notice, under Rule 50.*